IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| WUHAN HEALTHGEN BIOTECHNOLOGY ) <br> CORPORATION, et al., ) <br>  ) <br> Plaintiffs, ) <br>  ) <br> v. ) <br>  ) <br> EXPRESSTEC LLC, et al., ) <br>  ) <br> Defendants. ) <br> _____) | CIVIL ACTION <br><br> No. 24-4089-KHV |

## MEMORANDUM AND ORDER

On March 11, 2024, Wuhan Healthgen Biotechnology Corporation and Healthgen Biotechnology Co., Ltd. (collectively, "Healthgen") filed suit against ExpressTec, LLC, Ventria Bioscience, Inc. and InVitria, Inc. (collectively, "Ventria"). Healthgen alleges that in violation of The Patent Act, 35 U.S.C. § 271, Ventria has infringed three of its method patents for extracting, isolating and purifying recombinant human serum albumin ("rHSA") from transgenic rice grain. See Complaint (Doc. #1) filed March 11, 2024. This matter is before the Court on Defendants' Motion For Judgment On The Pleadings (Doc. #101) filed December 10, 2024 and Defendants' Motion To The Presiding District Judge To Stay The Magistrate Judge's Discovery Order (Doc. #145) filed February 14, 2025. For reasons stated below, the Court overrules defendants' motions.

## Legal Standard

A motion for judgment on the pleadings under Rule 12(c), Fed. R. Civ. P., is governed by the same standards as a motion to dismiss under Rule 12(b)(6), Fed. R. Civ. P. See Atl. Richfield Co. v. Farm Credit Bank of Wichita, 226 F.3d 1138, 1160 (10th Cir. 2000). In ruling on a motion to dismiss under Rule 12(b)(6), Fed. R. Civ. P., the Court assumes as true all well-pleaded factual

allegations and determines whether they plausibly give rise to an entitlement of relief. Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter to state a claim which is plausible—and not merely conceivable—on its face. Id.; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). In determining whether a complaint states a plausible claim for relief, the Court draws on its judicial experience and common sense. Iqbal, 556 U.S. at 679–80.

Plaintiffs bear the burden to frame their claims with enough factual matter to suggest that they are entitled to relief; it is not enough to make threadbare recitals of a cause of action accompanied by conclusory statements. See Twombly, 550 U.S. at 556. Plaintiffs make a facially plausible claim by pleading factual content from which the Court can reasonably infer that defendants are liable for the misconduct alleged. Iqbal, 556 U.S. at 678. Plaintiffs must show more than a sheer possibility that defendants have acted unlawfully—it is not enough to plead facts that are "merely consistent with" defendants' liability. Id. (quoting Twombly, 550 U.S. at 557).

A pleading which offers labels and conclusions, a formulaic recitation of the elements of a cause of action or naked assertions devoid of further factual enhancement will not stand. Iqbal, 556 U.S. at 678. Similarly, where the well-pleaded facts do not permit the Court to infer more than the mere possibility of misconduct, the pleading has alleged—but has not shown—that the pleader is entitled to relief. See id. at 679. The degree of specificity necessary to establish plausibility and fair notice depends on context, because what constitutes fair notice under Rule 8(a)(2), Fed. R. Civ. P., depends on the type of case. Robbins v. Okla., 519 F.3d 1242, 1248 (10th Cir. 2008).

**Factual Background**

In part based on information and belief, plaintiffs' complaint alleges as follows:

I.     **Healthgen's Innovations**

Healthgen—which consists of two corporations organized under the laws of the People's Republic of China—developed a proprietary technology which enables the production of highly pure recombinant human serum albumin ("rHSA").  rHSA—the most abundant protein found in human blood plasma—has a wide variety of medical and clinical applications, such as treating blood loss, serious burns, hemorrhagic shock, liver cirrhosis and hydronephrosis.  Recombinant proteins are expressed from a host cell through genetic engineering techniques and must be purified to eliminate potential toxins and host-related impurities.  rHSA produced by human cells, animal cells or bacteria often contains trace amounts of impurities that could cause adverse immune responses in the human body, and conventional purification methods often fail to achieve the purity level that is required for safe and effective clinical use.[1]  Technology for extracting and purifying rHSA to high purity is crucial for large-scale production of rHSA.

Healthgen has developed a novel, cost-effective method of producing, extracting and purifying rHSA at a commercial scale by using rice grain instead of human cells, animal cells or bacteria.  Healthgen's method involves parameters such as the temperature, pH, buffers and resins used for purifying rHSA product to create a high purity level suitable for therapeutic applications.  Healthgen's product was the first of its kind to be approved for human clinical application in China and later in the United States.  Healthgen invested significant resources and time in creating products that are safe and effective, and obtained enforceable and valid patent protection for many of its advancements.

---

[1]     Other factors can also impact the quality and purity level of the end product.  These include the sequence by which the purification steps are carried out, the design of the purification steps, the pH, the temperature and the chemical solutions used at various purification steps.

## II.     Healthgen's Patents In Suit

### A.     U.S. Patent No. 9,951,100

On April 24, 2018, the United States Patent and Trademark Office (USPTO) issued to Healthgen U.S. Patent No. 9,951,100 ("the '100 Patent"), titled "Method for isolating and purifying recombinant human serum albumin from transgenic rice grain." The '100 Patent claims priority to a Chinese patent application filed December 24, 2010. Since at least March 1, 2024, Ventria has had notice of the '100 Patent.

The '100 Patent discloses and claims technologies associated with isolating and purifying rHSA from transgenic rice. The inventors discovered that this method has significant advantages over conventional methods by reducing cost associated with the purification process, maintaining consistency throughout various batches of the purified rHSA product and obtaining a higher purity of rHSA.

### B.     U.S. Patent No. 10,183,984

On January 22, 2019, the USPTO issued to Healthgen U.S. Patent No. 10,183,984 ("the '984 Patent"), titled "Method for extracting recombinant human serum albumin from transgenic rice grain." The '984 Patent claims priority to a Chinese patent application filed December 20, 2010. Since at least March 1, 2024, Ventria has had notice of the '984 Patent.

The '984 Patent discloses and claims technologies for extracting rHSA from transgenic rice. The inventors created an extraction method that, compared to conventional methods, substantially increases the concentration of rHSA in the resulting extracted solution. At the same time, the use of the patented extraction method leads to a reduction of non-target proteins such as endotoxins, microbial contamination and other impurities, which improves the quality of the rHSA products for clinical applications.

C.     U.S. Patent No. 10,730,926

On August 4, 2020, the USPTO issued to Healthgen U.S. Patent No. 10,730,926 ("the '926 Patent"), titled "Chromatographic method for isolating and purifying high-purity recombined human serum albumin." The '926 Patent claims priority to a Chinese patent application filed December 21, 2012. Since at least March 1, 2024, Ventria has had notice of the '926 Patent.

The '926 Patent discloses and claims technologies for isolating and purifying rHSA from transgenic rice. The patented methods significantly improve the quality of the rHSA product to achieve a purity of more than 99.9999 per cent and it has a content of an endotoxin that is less than 0.08 EU/mg.

## III.    Ventria's Alleged Infringement

Ventria consists of two corporations—Ventria Bioscience Inc. and InVitria, Inc.—and a limited liability corporation—ExpressTec LLC—organized under the laws of Delaware and headquartered in Junction City, Kansas. Ventria markets and sells plant-derived rHSA products for clinical and medical use. Its web site states that it uses the rice plant to manufacture desired proteins. Healthgen believes that Ventria develops, manufactures and sells a line of rHSA products—which Ventria calls Optibumin—that it derives from rice grain using the same methods as Healthgen's patented technologies.[2]

Ventria's web site states that its Optibumin rHSA product is the highest purity albumin on the market, that it is manufactured using a non-animal and non-human source and that Ventria owns and operates the complete supply and manufacturing chain. The web site also states that the

---

[2]     According to Ventria's published web sites, its "production process harnesses the humble rice plant's natural ability to use sunlight as an energy source and soil, water, and air as raw materials. Desired proteins are manufactured as the plant grows, and naturally become concentrated within the rice-seed endosperm for easy harvest and purification." Complaint (Doc. #1) at 12.

purity of the Optibumin is 100 per cent and the endotoxin level is 0.22 EU/mL. The vice president of Ventria authored a publication which states that the Optibumin has 100 per cent monomer purity.

Healthgen believes that any one or all of Ventria's extraction and purification methods fall within the scope of its patent rights, and that Ventria has made millions of dollars in sales of an infringing product and has caused significant damage to Healthgen.

On or about March 1, 2024, Healthgen gave Ventria notice of its patent rights and sought information from Ventria about its manufacturing and purification process for rHSA products. Ventria did not provide this information, and on March 6, 2024, plaintiffs received a reply email from Ventria's vice president stating that Ventria had deleted plaintiffs' message without reading it. To Healthgen's knowledge, the extraction and purification methods and protocol for Ventria's rHSA products, including Optibumin, cannot be reverse-engineered, so plaintiffs cannot determine whether defendants violate their patents.

On March 11, 2024, plaintiffs filed suit against defendants, asserting three counts for patent infringement in violation of 35 U.S.C. § 271. See Complaint (Doc. #1). On December 10, 2024, defendants filed their motion for judgment on the pleadings. See Defendants' Motion For Judgment On The Pleadings (Doc. #101). On February 14, 2025, defendants filed a motion to stay the magistrate judge's discovery order. See Defendants' Motion To The Presiding District Judge To Stay The Magistrate Judge's Discovery Order (Doc. #145).

## Analysis

### I.     Motion For Judgment On The Pleadings

Ventria argues that the Court should sustain its motion for judgment on the pleadings because plaintiffs' complaint does not plausibly allege that defendants infringe their patents.

Defendants argue that plaintiffs' allegations, made on information and belief, are conclusory and therefore are not entitled to the presumption of truth.  Defendants also argue that while plaintiffs allege that Ventria's process uses the same input (rice grain) and produces the same output (highly pure rHSA), the complaint does not allege facts that tie these similarities to the patented methods. Defendants argue that plaintiffs' email inquiry of March 1, 2024, shows that plaintiffs lack information to plausibly assert that defendants infringe their patented methods.

Plaintiffs respond that the complaint plausibly alleges infringement, but that the details of defendants' production process are solely in defendants' possession.  Plaintiffs assert that they have no way of accessing information about defendants' manufacturing processes because (1) defendants' CEO deleted plaintiffs' inquiry letter, (2) defendants never answered plaintiffs' inquiry and (3) plaintiffs cannot reverse-engineer defendants' methods.  Plaintiffs argue that their complaint meets the plausibility standard because it gives defendants fair notice of their claims and contains a detailed description of plaintiffs' patents and the features of defendants' products that sufficiently put defendants on notice of which activities plaintiffs allege as infringement.

Allegations pled on information and belief are generally sufficient to satisfy Rule 8. Chisholm v. Foothill Cap. Corp., 940 F. Supp. 1273, 1280 (N.D. Ill. 1996).  Though the federal rules do not explicitly authorize it, pleading on information and belief is permissible.  In re SoClean, Inc., Mktg., Sales Pracs. & Prods. Liab. Litig., No. 2-MC-152, 2023 WL 8006602, at *39 (W.D. Pa. Nov. 17, 2023) (Rules 8 and 11 indirectly support allegations on information and belief and allowing such pleading is practical necessity); see also Fed. R. Civ. P 11(b)(3) (attorney or unrepresented party certifies to their best knowledge, information and belief formed after inquiry reasonable under circumstances, that factual contentions will have evidentiary support after discovery); Fed. R. Civ. P. 8(b)(5) (party who lacks knowledge or information sufficient to

form belief about truth of allegation should so state).

Multiple circuits have held that the Court should not summarily reject factual allegations pled on information and belief when "the facts are peculiarly within the possession and control of the defendant, or where the belief is based on factual information that makes the inference of culpability plausible." Ahern Rentals, Inc. v. EquipmentShare.com, Inc., 59 F.4th 948, 954 (8th Cir. 2023); see also Arista Recs., LLC v. Doe 3, 604 F.3d 110, 120 (2d Cir. 2010); Menard v. CSX Transp., Inc., 698 F.3d 40, 45 (1st Cir. 2012); Soo Park v. Thompson, 851 F.3d 910, 928 (9th Cir. 2017); Kareem v. Haspel, 986 F.3d 859, 866 (D.C. Cir. 2021). Similarly, the Federal Circuit has observed that defendants cannot shield themselves from a complaint of infringement by operating in such secrecy that it is impossible for plaintiffs to file a complaint. K-Tech Telecommunications, Inc. v. Time Warner Cable, Inc., 714 F.3d 1277, 1286 (Fed. Cir. 2013). Accordingly, in evaluating a motion to dismiss or for judgment on the pleadings, the Court may consider whether any pleading deficiencies resulted from plaintiffs' inability to obtain information which is in defendants' exclusive control. George v. Urb. Settlement Servs., 833 F.3d 1242, 1255 (10th Cir. 2016).

At the pleading stage, plaintiffs need not prove their case or plead infringement on an element-by-element basis. Bot M8 LLC v. Sony Corp. of Am., 4 F.4th 1342, 1352 (Fed. Cir. 2021). The complaint must only place the alleged infringer on notice of what activity is being accused of infringement. Id. While plaintiffs' factual allegations must raise above the speculative level, specific facts are not necessary, and the statement need only give defendants fair notice of what plaintiffs' claim is and the ground on which it rests. Id. at 1353.

Here, defendants do not deny that information about their manufacturing process is in their sole possession, and they do not suggest that plaintiffs can access such information. Defendants did not respond to plaintiffs' inquiry and notified plaintiffs that their inquiry had been deleted.

Further, plaintiffs have alleged that they spent years developing novel innovations to extract and purify rHSA using rice grain—which results in higher levels of purity than traditional methods using bacteria, human cells or animal cells.  Plaintiffs allege that defendants use the exact same input and achieve the same result.  These facts make plausible the inference that defendants are culpable.  Accordingly, the Court will not reject plaintiffs' factual allegations just because the facts are pled on information and belief.

Defendants do not argue that the complaint is insufficient to put them on notice of plaintiffs' claims and grounds.  The complaint describes in detail plaintiffs' patented methods and the features of defendants' products which they believe infringe such methods.  Plaintiffs' complaint therefore states a claim on which relief can be granted.  Accordingly, the Court overrules defendants' motion to dismiss.

**II.     Motion To Stay**

Defendants ask the Court to stay the discovery order which Magistrate Judge Angel D. Mitchell entered on February 7, 2025, so that they may seek reconsideration under Local Rule 7.3 and file objections under Local Rule 72.1.4(a) by February 21, 2025.  Judge Mitchell overruled this exact motion to stay and rejected the arguments which defendants now make to this Court.  See Order (Doc. #144) filed February 14, 2025.

Having thoroughly considered defendants' position, which they have argued and reargued at length, the Court is not persuaded.  For the reasons stated in Judge Mitchell's Order (Doc. #144), and Plaintiffs' Opposition To Defendants' Emergency Motion For Stay (Doc. #140) filed February 14, 2025, the Court overrules defendants' motion to stay.

In order to facilitate the just, speedy and inexpensive determination of this case under Rule 1, Fed. R. Civ. P., the Court directs Judge Mitchell to summarily overrule any motion to

reconsider her Memorandum and Order (Doc. #132) filed February 7, 2025.  Further litigation of the issues in that order shall occur before the undersigned judge, on timely filed objections by defendants.

**IT IS THEREFORE ORDERED** that Defendants' Motion For Judgment On The Pleadings (Doc. #101) filed December 10, 2024 and Defendants' Motion To The Presiding District Judge To Stay The Magistrate Judge's Discovery Order (Doc. #145) filed February 14, 2025 are **OVERRULED.**

Dated this 19th day of February, 2025 at Kansas City, Kansas.

s/ Kathryn H. Vratil  
KATHRYN H. VRATIL  
United States District Judge
