# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| WUHAN HEALTHGEN BIOTECHNOLOGY CORPORATION, et al., <br><br> Plaintiffs / Counterdefendants, <br><br> v. <br><br> EXPRESSTEC LLC, et al., <br><br> Defendants / Counterclaimants. | Case No. 24-4089-KHV-ADM |
| VENTRIA BIOSCIENCE INC., <br><br> Plaintiff, <br><br> v. <br><br> WUHAN HEALTHGEN BIOTECHNOLOGY CORP., <br><br> Defendant. | Case No. 21-4008-KHV-ADM |

## MEMORANDUM AND ORDER

This consolidated case involves competing patent rights between essentially the only manufacturers of plant-derived recombinant human serum albumin ("rHSA") in the world: Plaintiffs/Counter-Defendants and Consolidated Defendants Wuhan Healthgen Biotechnology Corporation and Healthgen Biotechnology Co., Ltd. (collectively, "Healthgen") and Defendants/Counter-Claimants and Consolidated Plaintiffs InVitria, Inc., Ventria Bioscience Inc., and ExpressTec LLC's (collectively, "InVitria"). These companies have a history of legal disputes and allegations of theft, misappropriation, and infringement, which the court addresses below. This matter is now before the court on InVitria's Motion for Leave to Amend Answer, Separate Defenses & Counterclaims. (ECF 192.) By way of this motion, InVitria seeks to amend its answer

to (1) add a counterclaim of inequitable conduct by Healthgen that would render all patents asserted by Healthgen in this consolidated proceeding unenforceable; and (2) add affirmative defenses for lack of standing, unclean hands, and inequitable conduct. (*Id*.) Healthgen opposes InVitria's motion on the grounds that InVitria fails to meet the good-cause standard under Federal Rule of Civil Procedure 16, that InVitria's delay in amending its answer is undue and prejudices Healthgen, and that InVitria's proposed amendments are futile. (ECF 202.) For the reasons discussed below, the court finds that InVitria unduly delayed in bringing its proposed amendment and that the belated amendment would unfairly prejudice Healthgen. Accordingly, InVitria's motion to amend is denied.

## I.     BACKGROUND

On February 5, 2021, Ventria Bioscience Inc. ("Ventria") filed suit against Wuhan Healthgen Biotechnology Corporation ("Wuhan") asserting infringement of U.S. Patent No. 10,618,951 ("the '951 Patent") and U.S. Patent No. 8,609,416 ("the '416 Patent"). (D. Kan. Case No. 21-4008, ECF 1 ("the -4008 case").) Within a month of filing, the court stayed the case pursuant to 28 U.S.C. § 1659 pending the final determination of related proceedings before the United States International Trade Commission ("ITC"). (ECF 12.) While the case was stayed, Ventria stipulated on April 21, 2022, to dismiss its claims relating to the '416 Patent (ECF 13), leaving only the '951 Patent at issue in the -4008 case. On September 12, 2022, the ITC issued its Opinion and Final Determination Finding a Violation of Section 337 and issued a limited exclusion order against Wuhan. (ECF 19.) Wuhan appealed the ITC's exclusion order to the Federal Circuit, while the -4008 case remained stayed in this court. (*Id*.)

Meanwhile, on March 11, 2024, Healthgen filed a separate lawsuit in the District of Delaware, asserting that InVitria has infringed Healthgen's U.S. Patent Nos. 9,951,100 ("the '100

Patent"), 10,183,984 ("the '984 Patent"), and 10,730,926 ("the '926 Patent").  (Now D. Kan. Case No. 24-4089, ECF 1 ("the -4089 case").)  InVitria responded by asserting counterclaims seeking a declaratory judgment of noninfringement and invalidity of Healthgen's three asserted patents, and a counterclaim against Healthgen for infringement of InVitria's U.S. Patent No. 11,492,389 ("the '389 Patent").  (ECF 13, at 27-32.)  On May 23, the Delaware court entered a scheduling order in that, among other things, set a motion to amend deadline of December 16, 2024.  (ECF 18, at 1.)  On August 20, the Delaware court entered an order granting InVitria's motion to transfer venue to this court.  (ECF 57.)

Following transfer, this court held a status conference and, in consultation with the parties, entered a First Amended Scheduling Order that ensured the scheduling order deadlines were consistent with this court's local rules and practices.  (ECF 79.)  The First Amended Scheduling Order reset the deadline for any motions to amend to February 14, 2025.  (ECF 79, at 2, 4.)  The parties subsequently requested an adjustment to one aspect of the schedule relating to claim construction (ECF 128), which the court granted when it entered a Second Amended Scheduling Order on January 29 (ECF 131).

Turning back to the -4008 case (which was still stayed pending the Federal Circuit appeal of the ITC's exclusion order), on February 7, 2025, the Federal Circuit affirmed the ITC's final determination that, *inter alia*, Wuhan's clinical grade albumin products at issue in the ITC proceeding infringe claims 1 and 11-13 of the '951 Patent.  (ECF 38.)  On April 18, the parties filed a joint status report informing the court of the Federal Circuit's decision, which effectively ended the ITC proceedings.  (*Id*.)  Shortly thereafter, this court issued an Initial Order Regarding Planning and Scheduling in the -4008 case that ordered the parties to confer as required by Fed. R. Civ. P. 26(f) and submit a proposed scheduling order by May 13.  (ECF 39.)  In that order, the

3

court also noted the parties' involvement the -4089 case and ordered the parties to file any motion to consolidate the two cases by May 13.  (*Id.*)

Before the court convened the scheduling conference in the -4008 case, the parties completed claim construction proceedings in the -4089 case, culminating in a claim construction hearing on May 12.  (ECF 165.)  On May 23, Healthgen served supplemental infringement contentions that withdrew all infringement allegations as to the '984 and '926 patents, leaving only the '100 Patent as the lone remaining patent asserted by Healthgen. (*See* ECF 167.)  On June 12, Judge Vratil entered a claim construction order that governs in the -4089 case.  (ECF 181.)

Near the end of those claim construction proceedings, InVitria timely filed a motion to consolidate the -4089 and the -4008 cases in the interest of "judicial efficiency," which Healthgen opposed.  (ECF 42, 44, 45.)  On June 3, the court convened a scheduling conference in the -4008 case, during which the court told the parties that it would be granting InVitria's motion for consolidation of the -4008 and -4089 cases and that District Judge Kathryn H. Vratil would preside over both cases. (*See* ECF 47-49.)  Shortly thereafter, the court held another scheduling conference and entered a Third Amended Scheduling Order.  (ECF 182, 184.)  That scheduling order largely aligned the schedule in both cases in order to "catch up" the -4008 case with the more advanced stage of the -4089 case.  To do so, the court abbreviated the deadlines for litigating Invitria's '951 patent (at issue in the -4008 case) from the default deadlines under the court's Patent Local Rules, in part because the parties had already extensively litigated that patent in the ITC and at the Federal Circuit.  So, the Third Amended Scheduling Order set the following deadlines: invalidity contentions due on July 25; substantial completion of document production and exchange of preliminary claim constructions and extrinsic evidence due on August 8; initial expert witness disclosures due August 29; advice-of-counsel disclosures due September 2; rebuttal expert witness

4

disclosures due September 26; reply expert witness disclosures due October 17; completion of all discovery on November 4; proposed pretrial order due November 11; pretrial conference on November 18; dispositive motions, expert motions, and opening claim construction briefing for the '951 Patent due December 11; and trial beginning on May 4, 2026.  (ECF 184.)  During the scheduling conference, the court and the parties also discussed the deadline for amending the pleadings.  The court initially told the parties that it would not reset this deadline because it had already expired.  (ECF 203, at 4; *see also* ECF 79 at 2.)  But InVitria said it was considering a motion to amend its pleading to assert counterclaims of inequitable conduct against Healthgen related to the '100 Patent; Healthgen said it would oppose the motion.  (ECF 203, at 5-6.)  To expedite resolution of this dispute, the court reset the deadline for the parties to file any motions to amend the pleadings to June 27, 2025.[1]  (*Id.* at 6.)

## II.     ANALYSIS

### A.     Good Cause Under Rule 16.

A scheduling order "may be modified only for good cause and with the judge's consent."  FED. R. CIV. P. 16(b)(4).  To establish good cause, the moving party must show that it could not have met the motion to amend deadline despite "diligent efforts."  *Husky Ventures, Inc. v. B55 Invs., Ltd.*, 911 F.3d 1000, 1020 (10th Cir. 2018).  The moving party must show good cause for failing to move to amend prior to the cutoff date and for the length of time between learning of the new information warranting amendment and moving to amend.  *See Birch v. Polaris Indus.*, *Inc.*, 812 F.3d 1238, 1248 (10th Cir. 2015).  Because Rule 16 requires diligence, if a party knows of

---

[1] This June 27 deadline was not included in the Third Amended Scheduling Order issued after the June 17 scheduling conference, but the court's oral order during the conference suffices to reset the deadline.

"the underlying conduct but simply failed to raise [its] claims, . . . the claims are barred." *Gorsuch, Ltd., B.C. v. Wells Fargo Nat. Bank Ass'n*, 771 F.3d 1230, 1240 (10th Cir. 2014).  On the other hand, the "good cause requirement may be satisfied . . . if a [party] learns new information through discovery or if the underlying law has changed." *Id.*  Whether to grant a motion to amend is within the court's sound discretion. *Id.*

Nothing in InVitria's motion shows that InVitria could not have filed its counterclaim earlier, at least by the prior February 14 deadline for motions to amend the pleadings.  InVitria was well aware of the facts that form the basis of its allegations of inequitable conduct and unclean hands.  InVitria certainly did not exercise diligence in trying to assert its new counterclaim and defenses by the February 14 deadline.  Indeed, had InVitria explained the basis for its new counterclaim and defenses at the time of the scheduling conference on June 17, the court likely would not have reset the deadline for motions to amend.  Nonetheless, the court did agree to reset the deadline to June 27, and InVitria complied with that deadline.  As a result, Federal Rule of Civil Procedure 16 technically does not apply.  The court next considers whether the standards for amendment under Federal Rule of Civil Procedure 15(a)(2) are met.

**B.     Amendment Under Rule 15(a)(2).**

Rule 15(a)(2) directs the court to "freely give leave [to amend] when justice so requires." In freely allowing leave to amend, the court provides litigants with "the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties." *Hardin v. Manitowoc–Forsythe Corp.*, 691 F.2d 449, 456 (10th Cir. 1982).  A court may only withhold leave to amend for reasons such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of [the] amendment." *U.S. ex rel. Ritchie v. Lockheed Martin Corp.*, 558 F.3d 1161, 1166 (10th Cir. 2009) (alteration in original)

(quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  Practically speaking, the party opposing a motion to amend bears the burden to demonstrate why the amendment should not be permitted.  *See Wilkerson v. Shinseki*, 606 F.3d 1256, 1267 (10th Cir. 2010) (holding that in the absence of such a showing, amendment should be allowed).

Healthgen opposes amendment under Rule 15 on grounds of undue delay, prejudice, and futility.  (ECF 202.)  Although delay alone is not enough to deny a motion to amend, at some point delay becomes undue when it places an unwarranted burden on the court or when it becomes prejudicial by placing an unfair burden on the opposing party.  *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1205 (10th Cir. 2006).  In evaluating what constitutes undue delay sufficient to deny a motion to amend, the court must focus "primarily on the reasons for the delay."  *Id.* at 1206 (10th Cir. 2006).  Denial is appropriate where the party seeking amendment "has no adequate explanation for the delay."  *Frank v. U.S. West*, 3 F.3d 1357, 1365-66 (10th Cir. 1993).

InVitria has no adequate explanation for its delay in seeking this amendment.  InVitria has made allegations throughout this litigation that Dr. Daichang Yang, a former InVitria employee who co-founded Healthgen, has committed bad acts to harm InVitria.  For example, in one prior motion, InVitria argued that a protective order was necessary to protect InVitria from the "harm that could result to InVitria if its trade-secret manufacturing processes are either inadvertently disclosed to Healthgen or actively pursued and stolen by Chinese bad actors."  (*See* ECF 110, at 11.)  To illustrate its concern, InVitria specifically called out Dr. Yang as being "part of a Chinese government economic espionage program" seeking to "advance China's national interests by stealing foreign technologies" and also pointed to a theft of its trade secrets by a different former InVitria employee "with ties to a Chinese agricultural institute" who was convicted and imprisoned for conspiring to steal InVitria's trade secrets.  (*Id*. at 4-5, 11.)  In the current motion, InVitria

again attempts to accuse Dr. Yang of misconduct—asserting that its proposed amended answer "sets forth the extensive course of misconduct undertaken by Wuhan, Dr. Yang, and others on behalf of Wuhan to obtain issuance of several U.S. and Chinese patents, including the patents asserted against InVitria in this litigation." (ECF 192, at 5-6 (citing Am. Answer ¶¶ 20-48, 99-113).)

InVitria's reasons for its delay in seeking to amend its answer to assert an inequitable conduct counterclaim and related defenses are not persuasive. InVitria does not even attempt to argue—nor could it—that the proposed counterclaim only recently matured or that InVitria only recently learned or acquired the facts supporting the counterclaim and defenses because of new and developing conduct by Healthgen. InVitria's proposed amendments are largely based on Dr. Yang's conduct **20 years ago** when he left Ventria's employment, allegedly taking Ventria's trade secrets and other confidential, proprietary information with him, moved back to China, and began working with Wuhan. (*See* ECF 192-2 at 32 ("Dr. Yang's first patent application based on InVitria's misappropriated trade secrets, designated as Chinese Patent Application, CN 200510019084.4 (the "'084 Application"), was filed on July 13, 2005. The '084 Application was filed within two months of Dr. Yang's return to China. It discloses subject matter obtained through experimentation and research done at InVitria by its employees. The '084 Patent identifies Dr. Yang as the sole inventor and was subsequently assigned by Dr. Yang to Wuhan."); *see also* ECF 186-2 ¶¶ 5-8, 26-32.) InVitria concedes that "[e]ach added counterclaim and defense in the Amended Answer relates to the actions of Dr. Daichang Yang and former employees of InVitria that conspired to, and did, misappropriate trade secrets and technology developed and owned by InVitria for the benefit of Plaintiffs." (ECF 192, at 2.) Not only is this alleged conduct 20-years stale, but Ventria filed a lawsuit against Dr. Yang for this conduct in 2011. (ECF 186-2.) Ventria

8

voluntarily dismissed that lawsuit with prejudice after a settlement was executed 12 years ago in 2013.  (ECF 202, at 6; ECF 123-15.)  As Healthgen points out, InVitria was certainly aware of the underlying data disclosed in Healthgen's asserted '100 Patent prior to the dismissal of the trade-secret case because its patent family was specifically identified in Exhibit 2 appended to the settlement agreement.  (ECF 202, at 10.)  InVitria does not point to any new facts or recent actions by Healthgen on which its counterclaim and defenses are based.  In short, InVitria does not provide an adequate explanation for why it waited so long to seek leave to file its inequitable conduct counterclaim and related defenses.  Therefore, the court finds that InVitria unduly delayed in moving the court for leave to amend its pleading.

In addition, the court finds that Healthgen will be unduly prejudiced if the court were to allow InVitria's proposed amendment because the delay would place "an unwarranted burden on the court" and prejudice Healthgen by "placing an unfair burden" on it.  *Minter*, 451 F.3d at 1205.  As Healthgen points out, InVitria's proposed amendment would inject significant new factual issues that would require expanded fact discovery and expert discovery to address trade secrets and patent prosecution issues for procedures related to the Chinese National Intellectual Property Administration.  (ECF 202, at 11-12 (citing portions of InVitria's motion and proposed amended answer).)  Healthgen contends that significant time and effort would be needed to investigate these new allegations within the confines of the schedule set by the court following consolidation of the -4089 and -4008 cases.  Under the current schedule, the parties' document productions must be substantially complete by August 8, initial expert witness disclosures are due August 29, rebuttal expert witness disclosures are due September 26, and reply expert disclosures are due on October 17.  Discovery closes in just over three months on November 4, with a pretrial order due by November 11, and a pretrial conference set for November 18.  (ECF 184, at 3.)  Moreover,

potentially dispositive motions, motions challenging expert testimony, and opening claim construction briefing for the '951 Patent are due by December 11, with all such briefing wrapping up by January 23, 2026. (*Id.*) Trial is firmly set for May 4, 2026. Given this compressed case schedule, the court finds that Healthgen does not have adequate time and opportunity to prepare its defenses to InVitria's late-proposed counterclaim, nor does the court have adequate time to prepare and rule on the discovery and other disputes that will undoubtedly arise if the court were to allow InVitria's proposed amendment. Therefore, the court finds that both Healthgen and the court will be unfairly burdened if InVitria's proposed amendment—expanding the case into a patent infringement **and** trade secret misappropriation matter—is allowed.

In sum, mindful of the advanced stage of the parties' wholesale litigation efforts (including InVitria's former trade secret case settled in 2013, InVitria's current patent infringement case brought in 2021, the ITC proceedings and related Federal Circuit appeal, and Healthgen's current patent infringement case brought in 2024 in the District of Delaware and subsequently transferred to this court), combined with the fast-approaching case deadlines in this newly-consolidated case, the court finds that Invitria's proposed amendment would be unduly prejudicial.[2]

Accordingly, the court denies InVitria's motion to amend its pleading.

**IT IS THEREFORE ORDERED** that InVitria's Motion for Leave to Amend Answer, Separate Defenses & Counterclaims (ECF 192) is denied.

**IT IS SO ORDERED.**

---

[2] Because the court has found that InVitria's motion to amend should be denied on the grounds of InVitria's undue delay and the undue prejudice to Healthgen, the court does not reach Healthgen's additional futility arguments. (ECF 202, at 13-14.)

Dated July 25, 2025, at Kansas City, Kansas.

s/ Angel D. Mitchell<br>
Angel D. Mitchell<br>
U.S. Magistrate Judge