IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

WUHAN HEALTHGEN BIOTECHNOLOGY
CORPORATION, et al.,

       Plaintiffs / Counterdefendants,

       v.

EXPRESSTEC LLC, et al.,

       Defendants / Counterclaimants.

Case No. 24-4089-KHV-ADM

VENTRIA BIOSCIENCE INC.,

       Plaintiff,

       v.

WUHAN HEALTHGEN BIOTECHNOLOGY
CORP.,

       Defendant.

Case No. 21-4008-KHV-ADM

## MEMORANDUM AND ORDER

This consolidated case involves competing patent rights between Plaintiffs/Counter-Defendants and Consolidated Defendants Wuhan Healthgen Biotechnology Corporation and Healthgen Biotechnology Co., Ltd. (collectively, "Healthgen") and Defendants/Counterclaimants and Consolidated Plaintiffs InVitria, Inc., Ventria Bioscience Inc., and ExpressTec LLC (collectively, "InVitria"). This matter comes before the court on InVitria's Motion for Protection. (ECF 236.) By way of this motion, InVitria seeks to vacate Healthgen's notices for four nonparty depositions and asks that the corresponding Rule 45 subpoenas to Lorne Jordan, Ning Huang, Steven Clyde Pettit, and Mary Ann Fernandez Santos ("Witnesses") be quashed. For the reasons

discussed below, the court denies InVitria's motion and directs the parties to move forward with the Witnesses' depositions.

## I.    PROCEDURAL BACKGROUND

This consolidated case has a long history.  To briefly recap, InVitria filed Case No. 21-4008 on February 5, 2021, alleging that Healthgen's plant-derived recombinant human serum albumin ("rHSA") products infringed InVitria's U.S. Patent Nos. 10,618,951 ("the '951 Patent") and 8,609,416 ("the '416 Patent").  The court stayed the case shortly thereafter pursuant to 28 U.S.C. § 1659 pending the final determination of related proceedings before the United States International Trade Commission ("ITC") with regard to the two asserted patents.  (ECF 12 in -4008 case.)  On April 21, 2022, InVitria filed a stipulation dismissing all claims relating to the '416 Patent with prejudice.  (ECF 13 in -4008 case.)

While the ITC action was proceeding on the '951 Patent, Healthgen filed suit in the District of Delaware on March 11, 2024, alleging that InVitria infringed three of its method patents for extracting, isolating, and purifying rHSA from transgenic rice grain—specifically, U.S. Patent Nos. 9,951,100 ("the '100 Patent"), 10,183,984 ("the '984 Patent"), and 10,730,926 ("the '926 Patent").  (ECF 1 in -4089 case.)  On May 2, 2024, InVitria filed counterclaims in that case (1) seeking a declaratory judgment that InVitria is not infringing Healthgen's patents, (2) seeking a declaratory judgment that Healthgen's patents are invalid, and (3) asserting that Healthgen is infringing InVitria's U.S. Patent No. 11,492,389 ("the '389 Patent"), which is related to the '951 Patent asserted in the -4008 case.  (ECF 13 in -4089 case.)  The court in the District of Delaware transferred the case to this court in September 2024.  In early 2025, the Federal Circuit affirmed the ITC's final determination that Healthgen's clinical grade albumin products at issue in the ITC proceeding infringed claims of the '951 Patent.  (ECF 38 in -4008 case.)

In May 2025, shortly after the district judge held a claim construction hearing in the -4089 case (ECF 165), Healthgen withdrew its infringement allegations for two of the asserted patents. (*See* ECF 181, at 1 n.1.)  About a month later, in early June, the court consolidated the two actions. (ECF 49 in -4008 case; ECF 172 in -4089 case.)  Shortly thereafter, the discovery issues started rolling in.  First, InVitria filed a motion for protective order relating to InVitria's objection to disclosure of its trade-secret, highly confidential, proprietary information to Healthgen's expert, Dr. Aaron Sato.  (ECF 186.)  The court denied the motion because InVitria did not demonstrate that the protective order was inadequate to protect its confidential information.  (ECF 196.)  Next, InVitria filed a motion to amend its answer to assert a counterclaim for inequitable conduct against Healthgen related to the '100 Patent and to add affirmative defenses for lack of standing, unclean hands, and inequitable conduct.  (ECF 192.)  The court denied the motion because InVitria unduly delayed in bringing the proposed amendment and because the belated amendment would have unfairly prejudiced Healthgen.  (ECF 210.)  About this same time in late June and early July, Healthgen filed four notices that Healthgen intended to issue subpoenas to the four Witnesses (ECF 194, 195, 197, 198, 199) and personally served subpoenas on each.  (ECF 237, at 6; *see* ECF 237-2, 237-3, 237-4, 237-5.)  The parties exchanged communications about scheduling the nonparty depositions.

On July 16, Healthgen filed a motion to compel InVitria to produce the following categories of documents: (1) pre-2010 developmental and sales documents; (2) documents reflecting the testing and data underlying the data in the '389 Patent; and (3) developmental documents for the manufacturing process of the accused products.  (ECF 205.)  Briefing on the motion to compel was complete on July 25.  Meanwhile, Healthgen proceeded to take the deposition of InVitria's corporate representative and CEO, Scott Deeter, on July 28.  (ECF 237, at

2.)  On August 5 and 8, InVitria sent a letter to Healthgen and to the court, respectively, stating that InVitria "will withdraw" its infringement claims for the '951 and '389 Patents.  (ECF 221.)  Given this withdrawal, the court asked the parties whether InVitria's withdrawal of its infringement claims for the '951 and '389 Patents narrowed the issues to be resolved in Healthgen's pending motion to compel.  (ECF 237-6, at 5.)  Healthgen acknowledged that InVitria's withdrawal of claims narrowed the issues in the motion to compel such that the court did not need to address Healthgen's requests for pre-2010 developmental and sales documents and for documents reflecting the testing and data underlying the data in the '389 Patent (categories (1) and (2) above); however, Healthgen pointed out to the court that it was "still waiting to hear whether this dismissal will be with prejudice."  InVitria agreed that the only category of documents remaining for the court's resolution were developmental documents for the manufacturing process of the accused products (category (3) above), but InVitria disagreed that its withdrawal of infringement claims for the '951 and '389 Patents required InVitria to dismiss them with prejudice. (ECF 237-6, at 4-5.)  On August 22, the court issued an order granting Healthgen's motion to compel InVitria's developmental documents for the accused products' manufacturing process. (ECF 224.)

In the meantime, on August 15, Healthgen requested a "status" conference with the court to discuss "the proper method and form of dismissal for InVitria's '398 and '951 Patents" given the advanced stage of the case in terms of expert disclosures and discovery closing on November 4.  (ECF 237-6, at 4.)  InVitria maintained that "no action by the Court is necessary."  (*Id*. at 2-3.) The court told the parties that a status conference was unnecessary because the issues in dispute would be discussed in the process of formulating the pretrial order.  (*Id*. at 2.)

On September 10, Healthgen re-served deposition notices for the Witnesses.  (ECF 228.) InVitria again objected to the depositions as irrelevant in light of its withdrawal of all infringement claims related to the '951 and '389 Patents.  At the parties' request, the court convened a discovery conference on September 29 regarding these third-party depositions and ultimately set a briefing schedule for motion practice because the parties could not agree whether the depositions should proceed.  (ECF 232-234.)  InVitria now moves to quash these deposition subpoenas.

## II.    LEGAL STANDARD

The court may, for good cause, "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."  FED. R. CIV. P. 26(c)(1).  The party seeking a protective order has the burden to demonstrate good cause.  *Johnson v. Gmeinder*, 191 F.R.D. 638, 642 (D. Kan. 2000) ("It is well settled that the party seeking a protective order has the burden to demonstrate good cause to support the protective order").

## III.    ANALYSIS

Each of the Witnesses is a former InVitria employee whose employment ended a decade or more ago.  Healthgen seeks their depositions because three are named inventors on the '389 and '951 patents, and the fourth provided a declaration during prosecution of those patents to overcome rejections.[1]  InVitria contends that "the depositions exceed the scope of permissible discovery" because neither patent "remains at issue in this litigation, and none of these Witnesses are knowledgeable regarding any live claim or defense."  (*See* ECF 236, at 2 (citing Fed. R. Civ. P. 26(b)(1), Fed. R. Civ. P. 45(d)(1) & (d)(3)(A)(iv)).)  InVitria makes this assertion that neither

---

[1] The '389 patent was asserted in the -4089 case. The '951 patent was asserted in the -4008 case. Healthgen asserted a defense of inequitable conduct with respect to the '951 patent in the 4008 case.

patent remains in the case because, via correspondence on August 5 and 8, 2025, InVitria told Healthgen and the district judge, respectively, that InVitria "will withdraw its claims of infringement" against Healthgen with respect to the '389 and '951 patents. (ECF 221.)

Healthgen contends that it is entitled to take these properly noticed depositions because the requested deposition testimony is relevant to determining if this is an exceptional case. Healthgen points out that its answer to InVitria's counterclaims in the -4089 case asserted an inequitable conduct defense as to the '389 patent (*see* ECF 20, at 17 ¶ 13) and included a prayer for attorney's fees based on an exceptional case finding under 35 U.S.C. § 285 (*see id.* at 18). Healthgen argues that InVitria has not met its burden to quash the subpoenas because the court has independent jurisdiction under § 285 and Healthgen will be the "prevailing party."

InVitria, on the other hand, contends that Healthgen is "skirting" the Federal Rules by pleading inequitable conduct in a single-sentence defense but getting a counterclaim-like benefit from this defense without having to provide the level of factual support necessary to plead a counterclaim under *Iqbal*/*Twombly* and Rule 9(b). (ECF 236, at 3.) InVitria also points out that, when InVitria agreed to withdraw its infringement claims as to the '389 and '951 patents, Healthgen understood InVitria's withdrawal to moot the portions of its pending motion to compel seeking discovery related to its invalidity and inequitable conduct defenses and confirmed to the court that those issues were "no longer relevant." (ECF 236, at 3.) InVitria therefore contends that Healthgen's insistence on deposing these four Witnesses concerning withdrawn claims is equivalent to discovery abuse and subjects them to undue burden.

Having reviewed the parties' briefing, the court finds that InVitria has not met its burden to demonstrate good cause and denies InVitria's motion for protection. First, InVitria has not shown that the information to be sought during the depositions is irrelevant. Healthgen pleaded

an inequitable conduct defense and made a request for an exceptional case finding with respect to the '389 and '951 patents.   Although InVitria notified the court that it will withdraw its infringement claims as to the '389 and '951 patents, it has taken no action to formally dismiss those infringement claims.   To do this, InVitria would need to make the appropriate filings pursuant to Federal Rule of Civil Procedure 41(a).   Unless and until it does so, discovery concerning the subject matter and prosecution of the '389 and '951 patents remains fair game.  InVitria suggests that Healthgen's decision to not pursue InVitria's pre-2010 developmental and sales documents and documents reflecting the testing and data underlying the data in the '389 Patent, in connection with its motion to compel, voids or nullifies any further discovery regarding these two subjects.   This is incorrect.   Healthgen may have dropped those categories of documents from its motion to compel for any number of reasons given the ever-changing landscape of the case.   Regardless, Healthgen's decision to not pursue them in its motion to compel does not mean it cannot pursue them via other discovery methods.

Second, the legal support cited in InVitria's motion does not appear to be on point, nor does it persuade this court that it has no jurisdiction over Healthgen's inequitable conduct defense or Healthgen's request for an exceptional case finding.   The cases cited by Healthgen are more persuasive.   *See Monsanto Co. v. Bayer Bioscience N.V.*, 514 F.3d 1229, 1243 (Fed. Cir. 2008) (holding that, because the district court had jurisdiction to determine whether there was inequitable conduct in the prosecution of patents that are otherwise no longer in suit, the court had jurisdiction to hold such patents unenforceable for inequitable conduct); *Elan Pharms., LLC v. Sexton*, 421 F. Supp. 3d 1119, 1125–27 (D. Kan. 2019) ("[T]he prevailing party retains the right to seek fees under the statute at the conclusion of the case regardless of whether that party asserts those fees in a counterclaim."); *Digital Ally, Inc. v. TASER Int'l, Inc.*, No. 16-2032-CM, 2018 WL 1152285, at

*2 (D. Kan. Mar. 5, 2018) (stating that "the court does retain jurisdiction for consideration of a motion for § 285 attorney fees [and] in considering such a request, the court may consider whether plaintiff engaged in inequitable conduct").  InVitria simply has not shown how these cases are distinguishable from the present case.

Third, the court has told the parties that it would address the issue of whether dismissal of claims should be with or without prejudice in connection with formulation of the pretrial order.  (ECF 237-6, at 2.)  Contrary to what InVitria appears to believe, that does not mean the court will simply drop the claims from the pretrial order—unless both parties agree (as they often do).  But, here, the parties have a lingering dispute as to whether the claims should be dismissed with or without prejudice.  So, the court intends to make sure the pretrial order either resolves this issue (by agreement of the parties) or includes a process for the presiding district judge to resolve it.[2]

For all of these reasons, the court finds that InVitria has not met its burden to show good cause for protection, and the court denies Invitria's motion.  Unless and until InVitria makes the appropriate filings pursuant to Federal Rule of Civil Procedure 41(a) necessary to voluntarily dismiss its claims for infringement of the '951 and '389 patents, the depositions of the four Witnesses may proceed as scheduled.

**IT IS THEREFORE ORDERED** that InVitria's Motion for Protection (ECF 236) is denied.

---

[2] In May 2025, Healthgen served updated infringement contentions reflecting its withdrawal of its infringement allegations as to US Patent Nos. 10,183,984 and 10,730,926.  The pretrial order will also address dismissal of these claims if the parties cannot agree on whether the dismissal is with or without prejudice.

**IT IS SO ORDERED.**

Dated October 21, 2025, at Kansas City, Kansas.

s/ Angel D. Mitchell
Angel D. Mitchell
U.S. Magistrate Judge